(No. 89-CC-0662– )

RANDALL SHARP, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 4, 1995.*

THILL, KOLODZ & FAVARO (SCOTT BARBER and THOMAS J. KOLODZ, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (THOMAS L. CIECKO, Assistant Attorney General, of counsel), for Respondent.

## OPINION

RAUCCI, J.

This cause comes before the Court on a tort claim filed by Claimant for damages arising out of Claimant's operation of a motorcycle on September 4, 1986, on State Route 14 in Des Plaines, Illinois. Claimant came in contact with a metal crash attenuation device attached to a concrete divider separating opposing lanes of traffic. He alleges that the metal crash attenuation device was in a dangerous and unsafe condition as a result of previous accidents and as a result of improper care and maintenance. A protective flange that "feathers" into the concrete was allegedly not present.

The principal issues are (1) whether the State had actual or constructive notice of a dangerous or unsafe condition, (2) whether the metal attenuation device was bent out into the left lane, and (3) whether the slipping of Claimant's rear wheel as a result of going over a foreign substance was the proximate cause of the accident.

On September 4, 1986, a dry and partly cloudy day, Claimant was operating his motorcycle in a southeasterly direction on Route 14 in the City of Des Plaines. As he entered an S-curve, the road went slightly uphill. The S-curve had a concrete median dividing the opposite lanes of traffic and at the end of the concrete was a metal crash attenuation device.

Traveling at about 25 miles per hour in the right lane as he entered the curve, the back wheel "slipped out" after rolling over what he believed (and in his notice of his intent to file an action on account of personal injuries, described as) an "oil patch." He corrected his angle and came up[right]. He then moved from the right lane into and beyond the left lane, brushed the median scraping his little finger and elbow, and while trying to get back into the left lane, his left leg was hooked by the metal crash attenuation device. The leg was broken.

Claimant testified that the metal crash attenuation device was not, at the time of the accident, attached to the concrete median. He testified that on the date of the accident, the metal crash attenuation device, rather than being attached, was bent out into the roadway. Claimant suffered a compound fracture of the tibia and fibula, a cut below his knee and nerve damage to his left foot, and particularly the toes. Two metal rods were surgically inserted into his leg, and he incurred in excess of $11,000 in medical expenses. He was in constant pain for three months after the accident, and still experiences pain in his leg and foot.

Claimant had traveled the road previously, and had noticed the alleged defect approximately eight times from April to September 4, 1986. Claimant's friend, Lawrence Miller, testified that he had observed the defect in March 1985 and in August 1986. Claimant's father testified that the day after the accident he observed the defect.

Joseph Kostur, Jr., who at the time of the accident was the district safety and claims manager for the Illinois Department of Transportation, testified both as a witness for Claimant and for Respondent. He testified that the feathered flange is an "integral part" of the crash attenuation device, and that when you have "a concrete barrier wall, it is a definite, absolute, fixed hazard to oncoming traffic * * *."

Kostur further testified that to the best of his knowledge, after investigation, he could not find records that there was any problem with the crash attenuation device for a period of six months prior to the accident. He further testified that he had a memorandum dated December 28, 1988, which indicated that the device had been rebuilt on April 20, 1986.

The State is not an insurer of the safety of users of its highways. (*Cotner v. State* (1987), 40 Ill. Ct. Cl. 71.) In order for Claimant to prevail, he must prove that the State had actual or constructive notice of the dangerous condition. (*Norman v. State* (1982), 35 Ill. Ct. Cl. 693.) "The mere fact that a defective condition existed, if, in fact, it did exist, is not, in and by itself, sufficient to constitute an act of negligence on the part of the respondent." (*Palmer v. Northern Illinois University* (1964), 25 Ill. Ct. Cl. 1.) Claimant, in order to prevail, must also show that the alleged defect was the proximate cause of his injury. *Stanley v. State* (1986), 39 Ill. Ct. Cl. 107.

Claimant has failed to establish that the State had actual or constructive notice of the alleged defect. The evidence establishes that the affected area had been rebuilt on April 20, 1986, and the record does not establish that any actual notice was given to the State thereafter of any defect. Since the roadway was maintained by the City of Des Plaines (while the median area was the responsibility of Respondent), we find the passage of time from April 20, 1986, until September 4, 1986, did not establish constructive notice of this particular defect. Because we find that the State did not have notice of the defect, it is not necessary to determine whether the defect actually existed.

Claimant has failed to meet his burden as to proximate cause. The evidence establishes that Claimant's rear wheel "skidded out" and caused him to lose control immediately prior to the breaking of his leg. He testified that he believed he hit an oil patch, and in his notice so alleged.

The claim should be dismissed.

It is therefore ordered, adjudged and decreed that this claim be, and it is hereby, dismissed with prejudice.